**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
NORTHWELL HEALTH, INC.,

                                     Plaintiff,                              **REPORT AND**
                                                                            **RECOMMENDATION**

                                                                            CV 17-1611 (DRH) (AKT)

                  - against -


NORTHWELL STAFFING AGENCY, LLC,
and VERONICA WOODS, a/k/a VERNICA
WOODS, a/k/a VERTISSHA WOODS,

                                     Defendants.
------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.    <u>PRELIMINARY STATEMENT</u>

        Plaintiff Northwell Health, Inc. ("Plaintiff" or "Northwell") commenced the instant

action against Defendants Northwell Staffing Agency, LLC ("NWSA") and Veronica Woods,

a/k/a Vernica Woods, a/k/a Vertissha Woods ("Woods") (collectively, "Defendants") for their

alleged unauthorized use of Plaintiff's service marks, corporate names, and trade names.  *See*

*generally* Complaint ("Compl.") [DE 1].  Specifically, Plaintiff alleges that Defendants'

unauthorized commercial use of "Northwell Health" and "Northwell Health, Inc." (collectively,

the "Northwell Mark") constitutes (1) trademark infringement under 15 U.S.C. § 1114(1); unfair

competition and false designations of origin under 15 U.S.C. § 1125(a); (3) unfair competition

under the common law of New York; and (4) a violation of the Anticybersquatting Consumer

Protection Act under 15 U.S.C. § 1125(d).  *See generally id.*  After Defendants failed to answer

the Complaint, Plaintiff requested a Certificate of Default from the Clerk of the Court, *see* DE

16, and on April 27, 2017, the Clerk issued a Certificate of Default for both Defendants, pursuant

to Federal Rule of Civil Procedure 55(a). *See* DE 18. Thereafter, Plaintiff filed a motion for default judgment. *See* DE 20. Judge Hurley referred the matter to this Court for a Report and Recommendation as to whether the default judgment should be granted, and, if so, to determine the appropriate amount of damages, costs, and/or fees, if any, to be awarded. *See* May 9, 2017 Electronic Order. Based upon the information submitted by the Plaintiff as well as the applicable law, and for the reasons set forth below, the Court respectfully recommends to Judge Hurley that Plaintiff's motion for default judgment be GRANTED.

## II.  BACKGROUND

### A.    The Complaint

The following facts are taken from the Complaint and are assumed to be true for purposes of this motion. Plaintiff Northwell is a New York not-for-profit corporation and owner of the Northwell Mark in connection with a wide variety of medical and healthcare related services provided primarily in New York State. Compl. ¶¶ 1, 14. Northwell's healthcare system includes 21 hospitals, over 450 community facilities, and a large network of long-term care, rehabilitation, home care, hospice, and medical and nursing schools. *Id.* ¶ 16. Northwell employs approximately 61,000 people and has more than 12,000 member physicians. *Id.* ¶ 17. Its services include a staffing agency, a licensed home care agency, and two certified home health agencies which provide for medical and healthcare needs, including nurses, home health aides, physical, speech, and occupational therapists, social workers, and personal care assistants for inpatient facilities, ambulatory practices, and home care needs. *Id.* ¶ 18.

Defendant NWSA is a New York limited liability company and Defendant Woods is an individual and principal of NWSA. Compl. ¶¶ 3, 7. Woods is listed as the "Administrator" and "Authorized Official" for NWSA according to the National Provider Database. *Id.* ¶ 9. She

wrote to a third party health plan, Fidelis, on behalf of NWSA and provided her email address as vwoods@northwellstaffing.com. *Id.* ¶ 10.

On December 4, 2015, Plaintiff changed its name from North Shore-Long Island Jewish Health System, Inc., to Northwell Health, Inc., pursuant to a Certificate of Amendment to its Certificate of Incorporation filed with the New York Secretary of State. Compl. ¶¶ 19-20. Plaintiff has been using the Northwell Mark since January 1, 2016. *Id.* ¶ 21. Northwell owns U.S. Registration Nos. 5,014,738 and 5,005,174 for the Northwell Mark, with priority filing dates of July 6, 2015 (word mark) and September 22, 2015 (word and design mark).[1] *Id.* ¶ 24. The name change to Northwell Health, Inc. was publicized months before January 1, 2016 in well-known publications such as *The New York Daily News*, *The Washington Times*, and *Crains New York*. *Id.* The Northwell Mark has also been promoted through television commercials on major networks and in Super Bowl 2016 as well as in *The New York Times* and *The Wall Street Journal*. *Id.* ¶¶ 21-22. Based on the foregoing information, Plaintiff claims (1) the Northwell Mark has gained secondary meaning as denoting medical and healthcare related services of excellent quality and value, and (2) the Northwell Mark has become a business asset of immense value to Plaintiff. *Id.* ¶ 23. Northwell's registrations in connection with the Northwell Mark are in full force and effect and have never been abandoned. *Id.* ¶ 24.

On or about September 16, 2016, Defendants formed NorthWell Staffing Agency, LLC in New York State and began operating as NorthWell Staffing Agency (the "Infringing Mark") on Long Island and in Queens County, New York. Compl. ¶ 25. Defendants did so without Plaintiff's consent or authorization. *Id.* Plaintiff alleges that, given the identical nature of the

---

[1] Exhibits E and F to Plaintiff's Complaint are copies of Plaintiff's Certificates of Registration from the Patent and Trademark Office.

dominant element "Northwell" in both parties' names and the fact that both parties provide medical and healthcare staffing services, Defendants' use of the Infringing Mark creates the false impression that the parties' services emanate from the same source or that there is an affiliation, license, or other relationship between the parties, when there is not. *Id.* ¶ 26. According to Northwell, the likelihood of confusion is particularly strong because (1) Defendant NWSA's services are provided in the same geographic region as Plaintiff's (*i.e*., Long Island and Queens), and (2) Plaintiff and NWSA have each entered into contracts with one or more of the same health plans, pursuant to which these plans have agreed to reimburse NWSA and Plaintiff for the provision of healthcare services to such plans' members. *Id.* ¶¶ 27-28.

Defendants' use of the Infringing Mark is, according to Plaintiff, particularly damaging because NWSA has received negative reviews for allegedly not paying its nursing staff and failing to send pertinent documentation to Albany for a patient's continuity of care. *Id.* ¶ 29. Northwell alleges that consumers and the public are likely to mistakenly believe that Northwell has committed these offenses, and that its reputation will be irreparably harmed as a result. *Id.* According to the Complaint, Northwell received a call from a patient complaining about the failure of NWSA to pay his caregiver under the mistaken believe that NWSA and Northwell were the same company. *Id.* ¶ 30. Plaintiff also asserts that it received a call from a health plan mistakenly believing that NWSA and Plaintiff were the same company. *Id.* ¶ 31.

On or about March 8, 2017, Plaintiff, through counsel, sent a notice letter to Defendant NWSA using Defendant Woods' email address which she had provided in the letter to third party Fidelis, namely, vwoods@northwellstaffing.com. Compl. ¶ 34. The letter articulated Plaintiff's objections to Defendants' use of the Infringing Mark. *Id.* ¶ 35. In response to this letter, Defendant Woods allegedly contacted Plaintiff's counsel and indicated that NWSA had no

4

intention of ceasing use of the Infringing Mark.  *Id.* ¶ 36.  Additionally, Plaintiff states that Defendants willfully registered and began using in commerce the domain name "northwellstaffing.com" (the "Infringing Domain"), and did so in connection with the email address for Defendant Woods, vwoods@northwellstaffing.com.  *Id.* ¶ 60.

Based on the above allegations, Plaintiff's Complaint asserts claims for (1) trademark infringement under 15 U.S.C. § 1114(1); (2) unfair competition and false designations of origin under 15 U.S.C. § 1125(a); (3) unfair competition under the common law of New York; and (4) violation of the Anticybersquatting Consumer Protection Act under 15 U.S.C. § 1125(d).  *See generally* Compl.  Plaintiff's Complaint seeks:  a permanent injunction enjoining Defendants from providing or promoting any services under the Infringing Mark, or from unfairly competing with Plaintiff; statutory damages; punitive damages; attorneys' fees; costs; and the transfer to Plaintiff of the Infringing Domain name, as well as any other domain name or written or printed material in Defendants' possession that contains or bears the Infringing Mark.  *Id.* at 12-14.

### B.    Procedural History

On March 22, 2017, Plaintiff filed the Complaint in this action.  *See generally* Compl.  Defendant NWSA was served with the Summons and Complaint on March 27, 2017 via personal service upon Lisa Knight, an Administrative Assistant with NWSA, who confirmed she is authorized by appointment to receive service.  *See* DE 12.  On March 28, 2017, Defendant Woods was personally served with the Summons and Complaint at her home address.  *See* DE 13.  After Defendants failed to answer or otherwise respond to the Complaint, Plaintiff requested a Certificate of Default from the Clerk of the Court on April 26, 2017.  *See* DE 16.  On April 27, 2017, the Clerk issued a Certificate of Default as to both Defendants, pursuant to Federal Rule of Civil Procedure 55(a).  *See* DE 18.  Plaintiff filed the instant motion for default

judgment on May 8, 2017.  *See* DE 20.  The motion was served on Defendant NWSA by U.S.

mail at its business address and on Defendant Woods by U.S. mail at her home address.  *See*

DE 21-1.  Judge Hurley then referred the matter to this Court for a Report and Recommendation

as to whether the default judgment should be granted, and, if so, to determine the appropriate

amount of damages, costs, and/or fees, if any, to be awarded.  *See* May 9, 2017 Electronic Order.

Defendants have not filed any opposition to the motion or otherwise interposed a response in this

action.  Nor have the Defendants communicated with the Court in any way.

### III.   LEGAL STANDARD

For a movant to obtain a default judgment, it must complete a two-step process.  First,

"[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or

otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the

party's default."  FED. R. CIV. P. 55(a).  Once the clerk's certificate of default is issued, the

moving party may then make an application for entry of a default judgment, pursuant to FED. R.

CIV. P. 55(b).  A default constitutes an admission of all well-pleaded factual allegations in the

complaint, and the allegations as they pertain to liability are deemed true.  *See* FED. R. CIV. P.

8(b)(6); *Joe Hand Promotions, Inc. v. Duke Bazzel Tobacco & Lounge LLC*, No. 13 Civ. 300,

2014 WL 2711168, at *1 (N.D.N.Y. Jun. 16, 2014); *Gesualdi v. Specialty Flooring Systems, Inc.*,

No. 11 Civ. 5937,  2014 WL 2208195, at *2 (E.D.N.Y. May 28, 2014); *Joe Hand Promotions,*

*Inc. v. El Norteno Restaurant Corp.*, No. 06 Civ. 1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept.

28, 2007) (citing *Greyhound Exhibitgroup, Inc. v. E.I. U.I. Realty Corp.*, 973 F.2d 155, 158 (2d

Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993)); *Finkel v. Omega Commc'n Servs., Inc.*, 543 F.

Supp. 2d 156, 158 (E.D.N.Y. 2008) (citing *Garden City Boxing Club, Inc. v. Batista*, No. 05 Civ.

1044, 2007 WL 4276836, at *2 (E.D.N.Y. Nov. 30, 2007)).

However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *Profi-Parkiet Sp. Zoo v. Seneca Hardwoods LLC*, No. 13 Civ. 4358, 2014 WL 2169769, at *3 (E.D.N.Y. May 23, 2014), *adopted by* 2014 WL 2765793 (E.D.N.Y. Jun. 18, 2014); *Bravado Int'l Grp. Merchandising Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 186 (E.D.N.Y. 2009).  The fact that a complaint remains unanswered will not alone suffice to establish liability on its claims, since "a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading." *Said v. SBS Elecs., Inc.*, No. 08 Civ. 3067, 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24, 2010), *adopted as mod. by* 2010 WL 1287080 (E.D.N.Y. Mar. 31, 2010); *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) ("[I]t remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action.").

In determining whether a default judgment should be entered, courts consider the same factors which apply to a motion to set aside entry of a default, namely:  "1) whether the defendant's default was willful; 2) whether defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Reliance Commc'ns LLC v. Retail Store Ventures, Inc.*, No. 12 Civ. 2067, 2013 WL 4039378, at *2 (E.D.N.Y. Aug. 7, 2013) (citing *Mason Tenders Dist. Council v. Duce Constr. Corp.,* No. 02 Civ. 9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)); *see also O'Callahan v. Sifre*, 242 F.R.D. 69, 73 (S.D.N.Y. 2007) (finding that courts may consider "numerous factors, including whether plaintiff has been substantially prejudiced by the delay involved [ ] and whether the grounds for default are clearly established or in doubt" when deciding a motion for default judgment); *U.S. v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006) (finding that the grounds for a default judgment were established by the

defendant's failure to answer the complaint, particularly in light of the fact that the defendant had expressed no intention to do so at a later time).

Ultimately, the decision to grant a motion for default judgment is left to the sound discretion of the court. *See Finkel v. Romanowicz*, 577 F.3d 79, 87 (2d Cir. 2009) ("In permitting, but not requiring, a district court to conduct a hearing before ruling on a default judgment, Rule 55(b) commits this decision to the sound discretion of the district court."); *Palmieri v. Town of Babylon*, 277 F. App'x 72, 74 (2d Cir. 2008); *Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) ("The dispositions of motions for entries of defaults and default judgments . . . are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties."); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1983) ("The circumscribed scope of the district court's discretion in the context of a default is a reflection of our oft-stated preference for resolving disputes on the merits."); *Ainbinder v. Money Ctr. Fin. Grp., Inc.*, No. 10 Civ. 5270, 2014 WL 1220630, at *2 (E.D.N.Y. Mar. 24, 2014) ("The determination of a motion for default judgment is left to the sound discretion of the district court.") (citing *Shah*, 168 F.3d at 615).

## IV.   DISCUSSION

### A.   Default Judgment

#### 1.   *Willfulness*

When a defendant is continually and "entirely unresponsive," a defendant's failure to respond is considered willful. *Trs. of the Pavers and Rd. Builders Dist. Council Welfare, Pension, Annuity and Apprenticeship, Skill Improvement and Safety Funds v. JREM Constr. Corp.*, No. 12 Civ. 3877, 2013 WL 618738 at *3 (E.D.N.Y. Jan. 28, 2013); *Bridge Oil Ltd. v.*

*Emerald Reefer Lines*, LLC, No. 06 Civ. 14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008).  For this reason, and as discussed further below, the failure of Defendants to respond to the Complaint under the present facts sufficiently demonstrates willfulness.  *Div. 1181 Amalgamated Transit Union-New York Employees Pension Fund v. D & A Bus Co., Inc.*, No. 16 Civ. 5014, 2017 WL 4043325, at *1 (E.D.N.Y. Sept. 12, 2017) (citing *Elgard Corp. v. Brennan Const. Co.*, 248 F. App'x 220, 222 (2d Cir. 2007)); *Eastern Sav. Bank, FSB v. Beach,* No. 13 Civ. 341, 2014 WL 923151, at *5 (E.D.N.Y Feb. 12, 2014), *adopted by* 2014 WL 923151 (E.D.N.Y. Mar. 10, 2014); *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07 Civ. 6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007).

Plaintiff submitted affidavits of service demonstrating that both Defendants were served with the Summons and Complaint.  Defendant NWSA was served on March 27, 2017, *see* DE 12, and Defendant Woods was served on March 28, 2017.  *See* DE 13.  Neither Defendant answered or otherwise responded in any way to the Complaint, nor did either request an extension of time to respond.  In addition, Plaintiff provided the Court with Certificates of Service indicating that Defendants were served with the Notice of Motion for Default Judgment, including all memoranda, declarations, and exhibits, *see* DE 21-1, as well as with Judge Hurley's Order dated May 9, 2017 referring Plaintiff's motion to this Court for a Report and Recommendation.  *See* DE 23.  There is no indication that Defendants' failure to respond to the Complaint or the instant motion, despite being properly served both, was anything but deliberate.

### 2. *Meritorious Defense*

Turning to the next factor, the Court is unable to determine whether either Defendant has a meritorious defense, since neither has presented any to the Court.  *See Empire State Carpenters Welfare v. Darken Architectural Wood*, No. 11 Civ. 46, 2012 WL 194075, at *3 (E.D.N.Y. Jan.

17, 2012); *Bridge Oil Ltd.*, 2008 WL 5560868, at *2.  Although Defendants' defaults constitute

an admission of all the factual allegations stated in the Complaint as to liability, Plaintiff must

nevertheless demonstrate that the uncontested allegations set forth valid claims.  *See Said*, 2010

WL 1265186, at *2 ("With respect to liability, a defendant's default does no more than concede

the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those

uncontroverted allegations, without more, establish the defendant's liability on each asserted

cause of action."); *Barshay v. Specified Credit Associates I, Inc.*, No. CV151044, 2016 WL

3578993, at *2 (E.D.N.Y. June 3, 2016), *report and recommendation adopted sub nom.*, *Barshay

v. Specified Credit Associates 1, Inc.*, No. 15-CV-1044, 2016 WL 3582058 (E.D.N.Y. June 28,

2016); *see also J & J Sports Prods., Inc. v. Daley*, No. 06 Civ. 0238, 2007 WL 7135707, at *3-4

(E.D.N.Y. Feb.15, 2007) (discussing how "conclusory allegations based on information and

belief" are insufficient to support a finding of default-based liability).  Here, Plaintiff's motion

for default judgment seeks injunctive relief[2] based upon Defendants' (1) trademark infringement

under 15 U.S.C. § 1114(1); (2) unfair competition and false designation of origin under 15

U.S.C. § 1125(a); (3) unfair competition under the common law of New York; and (4) violation

of the Anticybersquatting Consumer Protection Act under 15 U.S.C. § 1125(d).  *See generally*

Compl. The Court must therefore determine if Plaintiff's Complaint has set forth valid claims

under each of these statutory and common law provisions.

---

[2]  Although Plaintiff's Complaint seeks multiple forms of relief, including damages, Plaintiff now ask the Court only to enjoin Defendants from using the Infringing Mark or any other false or misleading name or representation containing the element "Northwell," and to Order the transfer of the Infringing Domain name and any other domain name containing the element "Northwell" to Plaintiff.  *See* DE 20-3.

### a. The Lanham Act

#### i. *Applicable Legal Standard*

Counts I and II of Plaintiff's Complaint assert, respectively, claims for trademark infringement and unfair competition under the Lanham Act. The Trademark Act of 1946, known as the Lanham Act, "prohibits the use in commerce, without consent, of any 'registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods,' in a way that is likely to cause confusion." *Time, Inc. v. Petersen Pub. Co. L.L.C.*, 173 F.3d 113, 117 (2d Cir. 1999) (quoting 15 U.S.C. § 1114(1)(a)). To prevail on a claim of trademark infringement under the Lanham Act, "a plaintiff must demonstrate that [1] 'it has a valid mark entitled to protection and that [2] the defendant's use of it is likely to cause confusion.'" *Time, Inc.*, 173 F.3d at 117 (quoting *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 390 (2d Cir.1995)).

As to the first element, the Lanham Act provides that a "mark is entitled to protection when it is inherently distinctive; if the mark is 'merely descriptive,' it qualifies for protection only if it has acquired secondary meaning, *i.e.*, if it 'has become distinctive of the . . . goods in commerce.'" *United Merch. Wholesale, Inc. v. IFFCO, Inc.*, No. 13-CV-4259, 2015 WL 4094332, at *2 (E.D.N.Y. July 6, 2015) (quoting 15 U.S.C. § 1052(e)-(f); *Arrow Fastener Co.*, 59 F.3d at 390)) (internal citations omitted). Significantly, the registration of a trademark "is *prima facie* evidence that the mark is registered and valid (*i.e.*, protectable), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." *United Merch. Wholesale, Inc.*, 2015 WL 4094332 at *2 (quoting *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999)).

As to the second element, the holder of the mark must prove that "numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question

because of the entrance in the marketplace of defendant's mark." *Time, Inc.*, 173 F.3d at 117

(quoting *Gruner + Jahr USA Publishing v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir.

1993)).  To determine the likelihood of confusion, courts in the Second Circuit apply the

following eight factors:  (1) the strength of the plaintiff's trade dress; (2) the similarity of the

trade dresses; (3) the proximity of the products in the marketplace; (4) the likelihood that the

plaintiff will bridge the gap between the products (that is, enter a market related to that in which

the defendant sells its product); (5) any evidence of actual confusion; (6) the existence of bad

faith on the part of the defendants; (7) the quality of the defendant's product; and (8) the level of

sophistication of the relevant consumer group.  *United Merch. Wholesale, Inc.*, 2015 WL

4094332, at *2 (quoting *Nat. Organics, Inc. v. Nutraceutical Corp.*, 426 F.3d 576, 578 (2d Cir.

2005)).

       In addition to trademark infringement, the Lanham Act provides a remedy for unfair

competition where "[a]ny person who, on or in connection with any goods or services, or any

container for goods, uses in commerce any word, term, name, symbol, or device, or any

combination thereof, or any false designation of origin, false or misleading description of fact, or

false or misleading representation of fact, which . . . is likely to cause confusion." *Estate of*

*Ellington ex rel. Ellington v. Harbrew Imports Ltd.*, 812 F. Supp. 2d 186, 192 (E.D.N.Y. 2011)

(quoting 15 U.S.C. § 1125(a)(1)(A)).  This section of the Act prohibits conduct similar to the

prohibition on infringement; however, it is not limited to registered trademarks.  *Phillip Morris*

*USA Inc. v. Marlboro Express*, No. CV-03-1161, 2005 WL 2076921, at *4 (E.D.N.Y. Aug. 26,

2005).  Like liability for infringement, liability for unfair competition under the Lanham Act is

established "if a plaintiff can demonstrate (1) that it has a valid trademark entitled to protection

under the Act, and (2) defendant's actions are 'likely to cause confusion.'" *Phillip Morris USA*

12

*Inc.*, 2005 WL 2076921, at *4 (quoting *Arrow Fastener Co.*, 59 F.3d at 390).

### ii. *Application to the Facts*

Plaintiff is the owner of the Northwell Mark in connection with medical and healthcare related services provided primarily in New York State. Compl. ¶¶ 1, 14. Plaintiff owns U.S. Registration Nos. 5,014,738 and 5,005,174 for the Northwell Mark, with priority filing dates of July 6, 2015 (word mark) and September 22, 2015 (word and design mark).[3] *Id.* ¶ 24. Since registration "is *prima facie* evidence that the mark is registered and valid (*i.e.*, protectable), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce," Plaintiff has satisfied its pleading burden as to the first element of trademark infringement. *United Merch. Wholesale, Inc.*, 2015 WL 4094332, at *2.

Plaintiff has also successfully satisfied its pleading burden as to the second element by sufficiently asserting that Defendants' use of the Infringing Mark is likely to cause confusion. The Northwell Mark and the Infringing Mark are undeniably similar in their use of the dominant element "Northwell." *See* Compl. ¶¶ 25-26. Both Plaintiff and NWSA provide medical and healthcare staffing services in Queens and Long Island, and Plaintiff and NWSA have each entered into contracts with one or more of the same health plans. *Id.* ¶¶ 1, 25, 27-28. NWSA has received negative reviews for allegedly not paying its nursing staff and failing to send proper documentation to Albany for a patient's continuity of care. *Id.* ¶ 29. According to Plaintiff, there have been instances of a patient-consumer *and* a health plan confusing Plaintiff with NWSA. *Id.* ¶¶ 30-31. Lastly, Plaintiff emailed Defendant Woods with its objections to Defendants' use of the Infringing Mark, in response to which Woods indicated that NWSA had

---

[3] Certificates of Registration from the Patent and Trademark Office are attached as Exhibits E and F to Plaintiff's Complaint.

no intention of ceasing use of the Infringing Mark. *Id.* ¶¶ 34-36. These allegations adequately set forth, for purposes of Plaintiff's motion for default judgment, that Defendants' use of the Infringing Mark is likely to cause confusion. *See United Merch. Wholesale, Inc.*, 2015 WL 4094332, at *2.

Because Plaintiff has adequately pleaded that (1) it has a valid mark entitled to protection, and that (2) Defendants' use of the mark is likely to cause confusion, Plaintiff has sufficiently alleged Defendants' liability for trademark infringement under 15 U.S.C. § 1114(1) and unfair competition under 15 U.S.C. § 1125(a). *See Philip Morris USA Inc. v. C.H. Rhodes, Inc.*, No. 08 CV 0069, 2010 WL 1196124, at *3 (E.D.N.Y. Mar. 26, 2010*), report and recommendation adopted*, No. 08-CV-0069, 2010 WL 1633455 (E.D.N.Y. Apr. 21, 2010) (finding a plaintiff had sufficiently alleged liability under 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a) by pleading (1) the existence of a valid trademark and (2) that the defendant's actions were likely to cause confusion.) (quoting *Phillip Morris USA Inc.*, 2005 WL 2076921, at *4).

### b.  Common Law Unfair Competition

Count III of Plaintiff's Complaint asserts a claim of unfair competition under the common law of New York. "Unfair competition claims under New York common law are governed generally by the same standards as [unfair competition under] the Lanham Act, except the common law requires a showing of bad faith or intent." *Estate of Ellington ex rel. Ellington*, 812 F. Supp. 2d at 192-93 (citing *Genesee Brewing Co., *193 Inc. v. Stroh Brewing Co.,* 124 F.3d 137, 149 (2d Cir. 1997); *ESPN, Inc. v. Quiksilver, Inc.,* 586 F. Supp. 2d 219, 230 (S.D.N.Y. 2008)). Northwell has alleged that it put Defendant Woods on notice by letter that Northwell objected to NWSA's continued use of the Infringing Mark, a copy of which letter is attached as Exhibit H to the Complaint. Compl. ¶ 35. Plaintiff states that in response to this letter,

14

Defendant Woods "contacted Northwell's counsel and indicated that Defendant NWSA had no intention of ceasing use of the Infringing Mark." *Id.* ¶ 36.  This assertion, in addition to the underlying allegations which detail Plaintiff's claims for statutory infringement and unfair competition – *i.e.*, that the Northwell Mark and Infringing Mark are undeniably similar in their use of dominant element "Northwell," and that both Plaintiff and Defendants operate in the same industry and geographic region – are sufficient to plausibly suggest the existence of bad faith on the part of Defendants.  *See KatiRoll Co. v. Kati Junction, Inc.*, 33 F. Supp. 3d 359, 371 (S.D.N.Y. 2014) (concluding that "[a]lthough bad faith cannot be inferred from the act of copying, the extent of the similarities between [two restaurants] as well as the proximity of the two restaurants make a claim of bad faith plausible").  As such, Plaintiff has sufficiently alleged Defendants' liability for unfair competition under the common law of New York.

### c.  The Anticybersquatting Consumer Protection Act

#### i.  *Applicable Legal Standard*

Count IV of Plaintiff's Complaint asserts a claim under the Anticybersquatting Consumer Protection Act (the "ACPA").  The ACPA "creates a right of action against a person or entity that registers an internet domain name in bad faith, using someone else's protected mark." *NYP Holdings v. New York Post Pub. Inc.*, 63 F. Supp. 3d 328, 338 (S.D.N.Y. 2014) (citation omitted).  To state a claim under the ACPA, a plaintiff must demonstrate that (1) its marks were distinctive or famous at the time the domain name was registered; (2) the infringing domain names complained of are identical to or confusingly similar to plaintiff's mark; and (3) the infringer has a bad faith intent to profit from that mark.  *Id.* (citing 15 U.S.C. § 1125(d)(1)(A); *Webadviso v. Bank of America Corp.*, 448 Fed. Appx. 95, 97 (2d Cir. 2011)).

As to the first element, proof of a mark's registration "creates the presumption that the mark is more than merely descriptive, and, thus, that the mark is inherently distinctive." *Lane Capital Mgmt., Inc.*, 192 F.3d at 345 (citing *PaperCutter, Inc. v. Fay's Drug Co.*, 900 F.2d 558, 563 (2d Cir. 1990)); *see NYP Holdings*, 63 F. Supp. 3d at 338.

As to the second element, the Second Circuit has noted that the "confusingly similar" standard under the ACPA is a different standard from the "likelihood of confusion" standard for trademark infringement, and requires a court to take "a more common-sense approach and 'simply . . . determine[ ]'" whether two domain names are confusingly similar to one another. *NYP Holdings*, 63 F. Supp. 3d at 339 (quoting *Wella Corp. v. Wella Graphics, Inc.*, 37 F.3d 46, 48 (2d Cir. 1994)); *see Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 498 (2d Cir. 2000).

As to the third element, the Second Circuit has expressly noted that "'bad faith intent to profit' are terms of art in the ACPA and hence should not necessarily be equated with 'bad faith' in other contexts." *Sporty's Farm L.L.C.*, 202 F.3d at 499 n.13. While the ACPA lists nine factors that courts may consider in determining the existence of "bad faith intent to profit," *see* 15 U.S.C. § 1125(d)(1)(B)(i),[4] these factors are not exhaustive, and courts may consider "the unique circumstances of [a] case." *Sporty's Farm L.L.C.*, 202 F.3d at 499.

---

[4] The ACPA lists the following factors that courts may consider in determining whether a person has bad faith intent:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
> (IV) the person's bona fide noncommercial or fair use of the mark in

### ii.  *Application to the Facts*

Plaintiff has successfully pleaded a claim under the ACPA for Defendants' registration of the Infringing Domain name.  With regard to the first element – the distinctiveness of the mark – Plaintiff owns U.S. Registration Nos. 5,014,738 and 5,005,174 for the Northwell Mark, Compl. ¶ 24, thus setting forth the presumption that the Northwell Mark is "inherently distinctive."  *See Lane Capital Mgmt., Inc.*, 192 F.3d at 345.  In addition, while it is not necessary that a plaintiff demonstrate that its marks are distinctive *and* famous to state a claim under the ACPA, Plaintiff has also alleged facts sufficient to plausibly suggest that the Northwell Mark is "famous" as that

---

a site accessible under the domain name;
(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

15 U.S.C. § 1125(d)(1)(B)(i).

term is defined in the Lanham Act, of which the ACPA is a part. *See* 15 U.S.C. § 1125(c)(2)(A) ("[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."); *NYP Holdings*, 63 F. Supp. 3d at 339 ("While the ACPA, 15 U.S.C. § 1125(d), does not specifically define 'famous,' that term is defined elsewhere within the Lanham Act in § 1125(c)(2)(A), in the context of trademark dilution claims."); *Prime Publishers, Inc. v. Am.-Republican, Inc*., 160 F. Supp. 2d 266, 277 (D. Conn. 2001) (for purposes of the ACPA, "[a] mark is famous if it has achieved a wide degree of recognition by the United States consumer public as the designator of the plaintiff's goods"). Specifically, Plaintiff alleges its name change to Northwell Health, Inc. was extensively publicized, including in such well-known publications as *The New York Daily News*, *The Washington Times*, and *Crains New York*. Compl. ¶ 21. According to the Complaint, the Northwell Mark has also been promoted through television commercials on major networks and in Super Bowl 2016, and advertisements in *The New York Times* and *The Wall Street Journal*. *Id.* ¶ 22. In combination with the Northwell Mark's ubiquity in the healthcare industry in New York State, *see id.* ¶¶ 16-17, the Court finds Plaintiff has adequately pleaded that the Northwell Mark is "famous" for purposes of the ACPA.

Regarding the second element of a claim under the ACPA, the Court concludes that Plaintiff has sufficiently pleaded facts to plausibly assert that the Infringing Domain is confusingly similar to the Northwell Mark. The Northwell Mark – "Northwell Health" and "Northwell Health, Inc.," – shares its dominant element – "Northwell" – with northwellstaffing.com, the Infringing Domain name. *See* Compl. ¶ 60. As such, Plaintiff has sufficiently stated the second element of a claim under the ACPA. *See Richemont Int'l S.A. v. Montesol OU*, No. 11 CIV. 9322, 2014 WL 3732887, at *10 (S.D.N.Y. May 13, 2014)*, report*

*and recommendation adopted as modified*, No. 11 CIV. 9322, 2014 WL 3732919 (S.D.N.Y. July 29, 2014) (finding that for purposes of default liability under the ACPA , "[t]he domain names registered and used by defendants—bestcartierjewelry.com, cartierjewelry.us and cartierjewellry.us—are similar enough to the CARTIER mark that a customer is reasonably likely to conclude that they are official Cartier websites or are affiliated or authorized by Cartier") (citing *Web-adviso v. Trump,* 927 F. Supp. 2d 32, 41 (E.D.N.Y. 2013); *Omega S.A. v. Omega Eng'g, Inc.,* 228 F. Supp. 2d 112, 127 (D. Conn. 2002)).

With respect to the third element of an ACPA claim, the Court concludes that Plaintiff has pleaded facts sufficient to plausibly suggest that Defendants exhibited a bad faith intent to profit from the Infringing Domain name.  Essential to this conclusion is the nature of the healthcare staffing marketplace in New York as alleged by Plaintiff, *see* Compl. ¶¶ 25-27, and the allegation that Plaintiff has been confused with NWSA on at least two occasions.  *Id.* ¶¶ 30-32.  Further, as discussed above, Defendant Woods contacted Plaintiff's counsel indicating that NWSA had no intention of ceasing use of the Infringing Mark.  *Id.* ¶ 36.

As to the nine non-exhaustive factors which courts may consider under the ACPA when determining the existence of bad faith intent to profit, the Court finds that factors I (whether Defendants have any trademark or intellectual property rights in the Infringing Domain), III (Defendants' prior use, if any, of the Infringing Domain in connection with the bona fide offering of any goods or services), and V (Defendants' intent to divert consumers from Plaintiff's online location to a site accessible under the Infringing Domain that could harm the goodwill represented by the Northwell Mark, either for commercial gain or with the intent to tarnish or disparage the Northwell Mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site) support a finding that Plaintiff has plausibly

19

alleged the Defendants' bad faith intent to profit from the Infringing Mark.  *See* 15 U.S.C. § 1125(d)(1)(B)(i).

For the foregoing reasons, the Court finds that Plaintiff has adequately set forth the elements of a claim under the ACPA.

### 3.    Prejudice

The last factor for the Court to consider is whether Plaintiff would be prejudiced if its motion for default judgment were denied.  Denying this motion would be prejudicial to Plaintiff "as there are no additional steps available to secure relief in this Court."  *Trs. of the Pavers and Road Builders Dist. Council Welfare, Pension, Annuity and Apprenticeship, Skill Improvement and Safety Funds*, 2013 WL 61873, at *4 (internal quotation omitted); *Bridge Oil Ltd.*, 2008 WL 5560868, at *2 (citing *Mason Tenders*, 2003 WL 1960584, at *3).  If a default judgment is not granted, Plaintiff will have no alternative legal redress to protect its mark.

Since all three factors necessary to establish a default have been satisfied, the Court respectfully recommends to Judge Hurley that default judgment be entered against both Defendants.

### B.    Relief

Although a party's default is viewed as a concession of all well-pleaded allegations of liability, it is not considered an admission of damages.  *Greyhound*, 973 F.2d at 158.  Therefore, once a party's default as to liability is established, a plaintiff still must prove damages. *See Cement and Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. and Training Fund and Other Funds v. Metro Found. Contractors, Inc.*, 669 F.3d 230, 234 (2d Cir. 2012); *Gutman v. Klein*, No. 03 Civ. 1570, 2010 WL 4975593, at *1 (E.D.N.Y. Aug. 19, 2010) ("While a default judgment constitutes an admission of liability, the quantum of damages

remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.") (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)).  The only question remaining, then, is whether Plaintiff has provided adequate support for the relief sought.  *See Gutman*, 2010 WL 4975592, at *1 (burden is on plaintiff to establish entitlement to damages) (citing *Bravado Int'l Group Merch. Servs.*, 655 F. Supp. 2d at 189); *Greyhound*, 973 F.2d at 158. In the instant action, rather than damages, Plaintiff seeks (1) a permanent injunction enjoining Defendants from using the Infringing Mark or any name or mark which contains the "Northwell" element, and from providing or promoting any services under the Infringing Mark or any similar infringing name; and (2) the transfer of the Infringing Domain, and any other domain or name containing the "Northwell" element to Plaintiff within thirty (30) days of entry of Judgment.  *See* DE 20-3.  The Court will address each of these requests in turn.

### 1.  *Permanent Injunction*

#### a.  **Applicable Legal Standard**

"A court may issue an injunction on a motion for a default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction."  *Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp.*, 954 F. Supp. 2d 145, 157 (E.D.N.Y. 2013) (quoting *Kingvision Pay–Per–View Ltd. v. Lalaleo,* 429 F. Supp. 2d 506, 516 (E.D.N.Y. 2006)).  In light of the U.S. Supreme Court's 2006 decision in *eBay Inc. v. MercExchange, LLC*, in addition to the traditional equitable requirements a party moving for a permanent injunction must satisfy – (1) success on the merits; (2) no adequate remedy at law; and (3) irreparable harm resulting without an injunction – a party in a trademark action moving for a permanent injunction must also establish that (4) the balance of hardships favors the movant; and (5) the public interest would not be

disserved by the injunction.  *See eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006);

*Stark Carpet Corp.*, 954 F. Supp. at 157 (citing *Rolex Watch U.S.A., Inc. v. Rolex Deli Corp.*,

No. 11 CV 9321, 2012 WL 5177517, at *4 (S.D.N.Y. Oct. 18, 2012)).  "In the realm of

trademark infringement and unfair competition, permanent injunctive relief will be granted only

upon proof of the likelihood that purchasers of the product may be misled in the future." *A.V. By*

*Versace, Inc. v. Gianni Versace S.p.A.,* 96-CV-9721, 2005 WL 147364, at *5 (S.D.N.Y. Jan. 24,

2005) (citing *Burndy Corp. v. Tededyne Indus., Inc.,* 748 F.2d 767, 772 (2d Cir. 1984)).  In the

absence of a supporting record beyond the Complaint, Plaintiff's Complaint "must make out

each of the factors needed to obtain [a permanent injunction]."  *Stark Carpet Corp.*, 954 F. Supp.

2d at 157.

### b.  Application to the Facts

Plaintiff has satisfied the requirements necessary for a permanent injunction.  With

respect to success on the merits, by virtue of Defendants' default and the Court's obligation to

accept the allegations in the Complaint as true, Plaintiff has established Defendants' liability as

to each count of the Complaint.  Consequently, Plaintiff has achieved success on the merits.

"This is a strong factor in favor of issuing an injunction."  *Stark Carpet Corp.*, 954 F. Supp. 2d at

158.

Turning to the second requirement – that no remedy at law exists – "[i]n the absence of

assurances in the record against a defendant's continued infringing activity, a remedy at law may

be deemed insufficient to compensate a plaintiff for her injuries."  *Eu Yan Sang Int'l Ltd. v. S &*

*M Enterprises (U.S.A.) Enter. Corp.,* No. 09-CV-4235, 2010 WL 3824129, at *4 (E.D.N.Y. Sept.

8, 2010), *report and recommendation adopted sub nom. Eu Yan Sang, Int'l LTD. v. S & M*

*Enterprises (U.S.A) Enterprises Corp.*, No. 09-CV-4235, 2010 WL 3806136 (E.D.N.Y. Sept. 23,

2010).  Indeed, rather than assurances that Defendants would cease their infringing activity, Defendant Woods explicitly communicated to Plaintiff's counsel that NWSA intended to continue its use of the Infringing Mark.  Compl. ¶ 36.  Defendants' refusal to appear in this action, in addition to Defendant Woods' statement that NWSA would continue to use the Infringing Mark, are sufficient to show that Plaintiff lacks an adequate remedy at law.  *See AW Indus., Inc. v. Sleepingwell Mattress Inc.*, No. 10-CV-04439, 2011 WL 4404029, at *11 (E.D.N.Y. Aug. 31, 2011), *report and recommendation adopted*, No. 10-CV-04439, 2011 WL 4406329 (E.D.N.Y. Sept. 21, 2011) (concluding that "defendant's refusal to appear demonstrates the inadequacy of plaintiff's remedies at law. No assurances have been made before this Court or to plaintiff that the infringing activity will cease, nor is it likely to cease without court intervention.  Therefore, plaintiff has established this element"); *Stark Carpet Corp.*, 954 F. Supp. 2d at 158 ("A defendant's refusal to appear in this action demonstrates the inadequacy of plaintiff's remedies at law.").

Looking to the third requirement under the *eBay Inc*. test, "[i]n a trademark case, a plaintiff can establish a risk of irreparable harm by showing a 'likelihood of confusion as to source or sponsorship.'"  *AW Indus., Inc.*, 2011 WL 4404029, at *10 (quoting *Am. Cyanamid Co. v. Campagna Per Le Farmacie in Italia S.P.A.*, 847 F.2d 53, 55 (2d Cir. 1988)).  As previously discussed in relation to Plaintiff's claims for trademark infringement and unfair competition under the Lanham Act, Defendants' use of the Infringing Mark is "likely to cause confusion." *Time, Inc.*, 173 F.3d at 117.  Plaintiff has therefore satisfied this prong of the test.  *See AW Indus., Inc.*, 2011 WL 4404029, at *10 (noting that the same factors which guide the "likely to cause confusion" analysis in the context of the Lanham Act guide courts' analyses for purposes of injunctive relief).

Regarding the fourth requirement under *eBay Inc*., the Court finds that the balance of hardships tips in favor of Plaintiff.  Without evidence from Defendants, the proper inference is that the only harm that would befall Defendants by the issuance of an injunction would be to prevent them from engaging in further illegal activity.  *See Stark Carpet Corp.*, 954 F. Supp. 2d at 163-64 (noting that "[i]n cases in which courts have found that infringement occurred, courts have essentially argued that the only hardship to the defendant from the injunction would be to prevent the defendant from engaging in further illegal activity. *See, e.g., DISH Network L.L.C. v. DelVecchio*, 831 F. Supp. 2d 595, 601-02 (W.D.N.Y. 2011)").  In addition, Plaintiff has expended time and resources to protect its trademark rights in this Court.  *See AW Indus., Inc.*, 2011 WL 4404029, at *11 (finding "plaintiff has already incurred substantial legal costs in protecting its trademark rights, and as such the balance of hardships tips unquestionably in plaintiff's favor").  For these reasons, this requirement has been satisfied.

Lastly, the Court finds that the public interest would not be disserved by the issuance of an injunction.  "[T]he public interest underlying the Lanham Act's prohibition of misleading advertisement is that of preventing consumer confusion or deception."  *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 193 (2d Cir. 1996); *see Stark Carpet Corp.*, 954 F. Supp. 2d at 164 ("Anti-infringement injunctions serve the public interest by preventing consumer confusion and allowing a more efficient marketplace to operate by virtue of the availability to consumers of a clear identification of products, services, and vendors.").  Given the likelihood of confusion between the Infringing and Northwell Marks as discussed above, the Court concludes that the public interest would likely be served by the issuance of an injunction.

For the foregoing reasons, the Court respectfully recommends to Judge Hurley that a permanent injunction be entered against Defendants, enjoining them from providing or

promoting any services under the name NorthWell Staffing Agency, or from otherwise using the Infringing Mark or any other name or mark that contains the element "Northwell," or that is confusingly similar to Plaintiff's service marks, corporate names, and trade names.

### 2.    *Transfer of the Infringing Domain*

In addition to a permanent injunction, Plaintiff seeks the "transfer to Plaintiff [of] the 'northwellstaffing.com' domain name and any other domain name owned and/or controlled by Defendants that contains the NORTHWELL element or a colorable imitation thereof."  DE 20-3. The ACPA "permits a court to 'order the forfeiture or cancellation of [a] domain name or the transfer of [a] domain name to the owner of the mark.'"  *Sporty's Farm L.L.C.*, 202 F.3d at 500 (quoting 15 U.S.C. § 1125(d)(1)(C)); *see Mattel, Inc. v. Internet Dimensions*, No. 99 Civ. 10066, 2000 WL 973745, at *3 (S.D.N.Y. July 13, 2000) (finding domain name "barbiesplaypen.com" confusingly similar to the mark "Barbie" because both contain the name "Barbie" and directing defendants to transfer the registration of the domain name "barbiesplaypen.com" to Mattel).  The Court believes the transfer of the Infringing Domain name to the Plaintiff is an appropriate remedy in this case.  *See Prime Publishers, Inc.*, 160 F. Supp. 2d at 282 (finding the transfer of a domain name appropriate where defendants were found to have violated the ACPA).  This remedy is also fitting given Defendant Woods' alleged express intent to continue using the Infringing Domain name.  *See* Compl. ¶ 36.  As such, the Court respectfully recommends to Judge Hurley that the Infringing Domain name, northwellstaffing.com, and any other domain name owned or controlled by Defendants containing the "Northwell" element, be transferred to Plaintiff within thirty (30) days of entry of default judgment against the Defendants.

## V.   CONCLUSION

For the reasons set forth above, the Court respectfully recommends to Judge Hurley that:

(1)   Default judgment be entered against Defendants NorthWell Staffing Agency, LLC and Veronica Woods, a/k/a Vernica Woods, a/k/a Vertisha Woods;

(2)   A permanent injunction be issued enjoining Defendants from:

A.   providing or promoting any services under the name NorthWell Staffing Agency (the "Infringing Name") or otherwise using the Infringing Name or any other mark or name which contains the "Northwell" element or is confusingly similar to Plaintiff's service marks, corporate names, and trade names "Northwell Health" and "Northwell Health, Inc.," including, without limitation, as a service mark, corporate name, trade name, certificate of assumed name, or domain name;

B.   using the Infringing Name or any other mark or name which contains the "Northwell" element to unfairly compete with Plaintiff; and

C.   using in connection with the sale of any goods or services, a false or misleading description or representation including the Infringing Name or any other mark or name which contains the "Northwell" element;

(3)   Within thirty (30) days of entry of default judgment, Defendants transfer to Plaintiff the "northwellstaffing.com" domain name and any other domain name owned and/or controlled by Defendants which contains the "Northwell" element or a colorable imitation thereof, including, without limitation, the Infringing Name; and

    (4)    The Court retain jurisdiction over this action as may be necessary or appropriate for the enforcement of the Court's Orders.

## VI.  OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See also* FED. R. CIV. P. 6(a) and (e).  Such objections shall be filed with the Clerk of the Court via ECF.  A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Denis R. Hurley, and to the Chambers of the undersigned.  Any requests for an extension of time for filing objections must be directed to Judge Hurley prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**Plaintiff's counsel is directed to serve a copy of this Report and Recommendation upon the Defendants forthwith by overnight mail and first-class mail and to file proof of such service on ECF promptly.**

SO ORDERED.

Dated: Central Islip, New York
       March 1, 2018

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge